**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **T.H.-1 and T.H.-2**

**No. 20-0651** (Preston County 18-JA-76 and 18-JA-77)

## MEMORANDUM DECISION

Petitioner Grandmother C.B., by counsel Aaron P. Yoho, appeals the Circuit Court of Preston County's August 4, 2020, order terminating her custodial rights to T.H.-1 and T.H.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, G. Phillip Davis, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing custodian, (2) denying her request for a post-adjudicatory improvement period, (3) finding the conditions of abuse and neglect could not be corrected in the near future, and (4) terminating her custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2018, the DHHR filed an abuse and neglect petition alleging that the parents exposed the children to substance abuse and abandoned them. The DHHR also alleged that petitioner, the children's paternal grandmother, had custody of T.H.-1 and T.H.-2 and failed to appropriately supervise or protect the children from the parents' substance abuse, criminal activity, and abandonment. The DHHR alleged that the parents lived in close proximity to petitioner's residence, and that the father routinely engaged in many drug purchases at the parents' home. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because both children share the same initials, we refer to them as T.H.-1 and T.H.-2, respectively, throughout this memorandum decision.

DHHR alleged that both children, then age thirteen, were abusing drugs, and T.H.-1 was using drugs at the parents' home. The DHHR further alleged that the children had a history of truancy, poor grades, and behavioral issues while in petitioner's custody. Specifically, the DHHR alleged that T.H.-2 was suspended from school for disruptive and aggressive behavior and reportedly assaulted petitioner and T.H.-1. Finally, the DHHR alleged that T.H.-2 was missing at the time of the petition's filing and petitioner believed she had run away with a boyfriend. Petitioner claimed to have alerted law enforcement as to the child's disappearance, but no documentation of such a report was found. As a result, the DHHR alleged that petitioner failed to adequately supervise the children; subjected them to unsafe conditions, including drug use; and caused educational neglect of the children. Thereafter, petitioner waived her preliminary hearing and the circuit court ratified the removal of the children from petitioner's home. The circuit court also permitted petitioner to have supervised phone contact with the children.

The circuit court held a series of adjudicatory hearings beginning in February of 2019. At the initial hearing, a school counselor and school attendance coordinator testified. The school counselor testified to many of the allegations in the petition, including her knowledge of T.H.-2's disciplinary record and of an incident where T.H.-1 engaged in self-harm. Specifically, the school counselor testified that T.H.-1 appeared in her office with cuts from apparent self-mutilation and told the counselor that she used razor blades to cut her arms because she was upset that her mother had abandoned her. The school counselor testified that T.H.-2 had extensive knowledge of drug activities in the local area, had documented behavioral issues at school—including threatening a school employee, admitted to her that he would often ride a motorcycle without a helmet, and that he would frequently leave petitioner's home for long periods at a time. The counselor testified that she made referrals to Child Protective Services ("CPS") regarding the children and had limited success contacting petitioner. The counselor detailed one incident where petitioner failed to appear at an arranged meeting to discuss T.H.-2's disciplinary issues. However, on cross-examination, the counselor acknowledged that T.H.-2 had another counselor outside the school system and that she could not definitively state whether petitioner was aware of their scheduled meeting. Next, the attendance counselor testified to the children's attendance records dating to the 2010-11 school year. Specifically, she testified that during a meeting with petitioner, she warned petitioner of potential criminal action against petitioner if the children continued to miss school. On cross-examination, the attendance counselor acknowledged that petitioner was never charged with truancy and the counselor admitted that she was not certain why petitioner was never so charged. Thereafter, the circuit court ordered that petitioner submit to a drug screen and that the multidisciplinary team should determine if petitioner should have supervised visitation with T.H.-2. The court then continued the hearing. Petitioner thereafter filed a motion for a post-adjudicatory improvement period.

Later that month, the circuit court continued the adjudicatory hearing and heard testimony from a therapist who testified about her work with the children. The therapist testified that she saw the children on a bi-weekly basis from October of 2017 until September of 2018. The therapist testified that both children had anger issues that largely stemmed from their mother's abandonment. The therapist further testified that T.H.-1 and T.H.-2 were angry at petitioner for "allowing" their mother to leave them. The therapist also testified that she met with petitioner and

the children and discussed T.H.-1's self-harm. The therapist characterized T.H.-1's wounds as "superficial marks," and noted that petitioner was aware of the self-harm. The therapist also testified that petitioner and the children missed a follow-up session in July of 2018 but appeared to discuss a safety plan for T.H.-1 the next month.

Finally, petitioner testified at the continued adjudicatory hearing in November of 2019. Petitioner testified that she had served as the primary caregiver for the children since 2011. Petitioner testified that the children's father informed her that the children would be better in her care; petitioner also testified that the father was incarcerated at the time of the hearing. Petitioner further testified that the children's mother would leave the children with her for long periods of time, including over a year at one point. According to petitioner, she was also responsible for arranging and paying for counseling for the children. On cross-examination, however, petitioner acknowledged that she was not aware of T.H.-1's self-harm until a cousin of the child informed her of it. Further, petitioner denied knowing that the children's father was abusing drugs. Based upon the testimony and evidence presented, the circuit court adjudicated petitioner as an abusing and neglecting custodian because she failed to protect and to properly supervise the children.

In June of 2020, the circuit court held a dispositional hearing wherein petitioner renewed her motion for an improvement period and moved for a post-dispositional improvement period. The DHHR opposed petitioner's motion and moved for petitioner's custodial rights to be terminated. In support of petitioner's motion, a counselor testified that petitioner regularly visited T.H.-1 and that she was a positive influence on the child's behavior and emotional recovery. Next, a CPS worker testified that petitioner refused to acknowledge any wrongdoing that led to the children being removed. The worker went on to testify that petitioner consistently stated in multidisciplinary team meetings that she did not do anything wrong and did not understand why the children could not reside with her. Finally, the CPS worker reiterated that the DHHR was seeking termination of petitioner's custodial rights.

At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period. In light of the evidence presented at the dispositional hearing, the circuit court found that although "[petitioner] cares for the children," it was "disturbed by her lack of acknowledgment or responsibility for the conditions that led to their abuse and neglect." The circuit court also found that the "kids were on honor roll when placed with [petitioner]," but that the evidence now revealed the children's truancy, poor grades, and behavioral issues. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's custodial rights.[2] The circuit court entered an order reflecting its decision on August 4, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

---

[2]The parents' parental rights were also terminated during the proceedings below. According to the parties, the permanency plan for the children is placement with a family member.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing custodian. According to petitioner, she was not afforded an opportunity to demonstrate that she could improve the issues of abuse and neglect. Specifically, she argues that the allegations of abuse in the proceedings were "not severe" and the circuit court's findings were in "clear contradiction to the evidence presented at [a]djudication." Therefore, it was error for the circuit court to find that her failure or inability to supervise the children constituted abuse or neglect. As such, petitioner argues there was insufficient evidence to adjudicate her as an abusing custodian. We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Additionally, pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose

physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

4

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as a neglecting custodian of the children. Although petitioner addresses the findings against the children's parents, she completely fails to address the evidence of her own neglectful behavior and her failure to protect the children. At various points in the proceedings, a CPS worker, school counselor, school attendance counselor, and the children's therapist testified as to petitioner's actions. Specifically, the children's therapist testified at the adjudicatory hearing that, while petitioner acknowledged concerns with the children's behavior, she minimized some issues and omitted other information altogether. The therapist also testified that petitioner did not engage in adequate supervision of the children and had issues controlling their behavior.

Further, petitioner herself testified that she was not aware of T.H.-2's self-harm until a cousin informed her of it, and admitted she did not know the father was abusing drugs, despite his extensive prior history of drug use and his related criminal convictions. Petitioner also allowed T.H.-1 to have extensive contact with the father and to engage in drug abuse herself. Under petitioner's supervision, the children were also frequently absent from school, causing their grades to decline. While petitioner disputes some of the children's absences, characterizing many of the absences as excused but not properly documented, she does not deny that the children missed several days of school for a variety of reasons. Additionally, petitioner argues that the children's grades improved when the children were initially in her custody and that their grades did not fall until the children grew older and "more understanding of their biological parents' abandonment." Although petitioner attempts to minimize her neglectful conduct as nothing more than a failure to act while the children's parents subjected the child to abuse and/or neglect, she ignores the fact that her failure to provide the children with appropriate supervision constituted neglect under the definition set forth above. Therefore, we find no error in the circuit court's adjudication of petitioner as neglecting the children.

Next, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she had voluntarily attended parenting classes, regularly visited with the children during the proceedings, and played an active role in the children's therapy sessions. Petitioner argues that these efforts demonstrate that she could have substantially corrected the conditions of abuse and neglect if granted an improvement period. We find petitioner's arguments unavailing.

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent or custodian "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

5

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. Importantly, petitioner does not dispute that she failed to acknowledge her own wrongdoing throughout the proceedings. Indeed, she claims on appeal that her response to caseworkers and service providers "was always the same: 'tell me what I did wrong.'" While petitioner argues that she proved she was likely to participate in an improvement period by participating in classes, visiting with the children, and participating in therapy sessions, these actions alone could not have been successful without petitioner's recognition of her abuse and neglect of T.H.-1 and T.H.-2. Further, a DHHR caseworker testified to petitioner's lack of candor and acknowledgement of wrongdoing. As such, there is ample evidence that petitioner's repeated failures to acknowledge the conditions of abuse and neglect resulted in her inability to establish that she was likely to fully participate in an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Next, petitioner takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect. However, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's custodial rights.

6

Lastly, because permanency has not yet been achieved for at least one of the children, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 4, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

7

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton